RAFAEL M. GONZALEZ, JR.
ACTING UNITED STATES ATTORNEY
**JAMES P. SCHAEFER, CALIFORNIA STATE BAR NO. 250417**
**ASSISTANT UNITED STATES ATTORNEY**
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1414
Email: James.Schaefer@usdoj.gov

Attorneys for Plaintiff United States of America

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MOUNTAIN CARE PHARMACY IDAHO, LLC, and JARED STONG,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiff United States of America brings this Complaint against Defendants Mountain Care Pharmacy Idaho, LLC ("Mountain Care") and Jared Stong ("Stong") and alleges:

## INTRODUCTION

1. This is an action to recover civil monetary penalties under the Comprehensive Drug Abuse Prevention and Controlled Substances Act of 1970 (also known as the "Controlled Substances Act" or "CSA"), as amended, 21 U.S.C. §§ 801-904, and its implementing regulations.

**COMPLAINT - 1**

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355.

3. Venue is proper under 28 U.S.C. §§ 1391(b) and 1395(a) because a substantial part of the events or omissions giving rise to the claims in this case occurred in this district.

## PARTIES

4. The United States is the Plaintiff in this action. The Drug Enforcement Administration ("DEA") is an agency within the United States Department of Justice responsible for enforcing the CSA.

5. Defendant Mountain Care is an Idaho limited liability company. At all times relevant to this action, Mountain Care was a pharmacy that dispensed drugs to hospice patients. Mountain Care's principal place of business was at 286 N. Maple Grove Drive in Boise, Idaho. Mountain Care was registered with the DEA pursuant to 21 U.S.C. §§ 822 and 823. Mountain Care was assigned DEA Registration Number FM1553672 with Schedules II-V Controlled Substances privileges.

6. Defendant Stong owned and operated Mountain Care and was responsible for Mountain Care's compliance with the CSA. Stong, a licensed Idaho pharmacist, filled prescriptions for hospice patients in Idaho, including some of the prescriptions underlying the United States' claims in this action.

## THE COMPREHENSIVE DRUG ABUSE PREVENTION AND CONTROL ACT (CSA) AND ITS IMPLEMENTING REGULATIONS

7. In 1970, Congress acknowledged that, while many controlled substances have useful and legitimate medical purposes, their illegal distribution has a substantial and detrimental

**COMPLAINT - 2**

effect on the health and welfare of the American public. The illegal distribution of controlled substances – whether from diversion, theft, or loss – facilitates prescription drug abuse. Accordingly, Congress enacted the CSA to place federal oversight and regulation over the controlled substance distribution chain.

8. The CSA regulates entities that dispense controlled substances by establishing controls over all stages of the chain of distribution of controlled substances in the United States, including all practitioners and pharmacies, through a closed and monitored system which makes it unlawful to manufacture, distribute, dispense, or possess any controlled substance except as authorized by the CSA. 21 U.S.C. § 801 *et seq.* The Attorney General is authorized to promulgate regulations for "the registration and control of the manufacture, distribution, and dispensing of controlled substances." 21 U.S.C. § 821.

9. Under the CSA, "controlled substances are strictly regulated to ensure a sufficient supply for legitimate medical . . . purposes and to deter diversion of controlled substances to illegal purposes. The substances are regulated because of their potential for abuse and likelihood to cause dependence when abused and because of their serious and potentially unsafe nature if not used under the proper circumstances." 75 Fed. Reg. 61,613 – 61,617 (Oct. 6, 2010) (DEA Policy Statement, "Role of Authorized Agents in Communicating Controlled Substance Prescriptions to Pharmacies").

10. Entities that dispense controlled substances are required to have a valid DEA registration number and are referred to by DEA regulations as "registrants." 21 C.F.R. §§ 1301.11(a) and 1300.01. Registrants and their owners, such as Mountain Care and Stong, are subject to the CSA, including, Title 21, United States Code, Sections 842(a)(1) and 842(a)(5).

**COMPLAINT - 3**

11. The CSA established a five-part classification schedule for prescription medications based upon medicinal value and potential for abuse and harm. *See* 21 U.S.C. § 812. The control is the strictest on substances in Schedule I. Schedule I drugs have no currently-accepted medical use in the United States and have a high potential for abuse. *Id.* The control lessens as the danger of abuse and dependency decreases. Thus, Schedule II drugs are those with a currently-accepted medical use, but also with a high potential for abuse and severe psychological or physical dependence. Schedule III-V drugs have currently-accepted medical uses and a decreasing potential for abuse and dependence as the schedule number increases. *Id.*

12. The CSA prohibits any manufacturer, distributor, or dispenser, including pharmacies and pharmacists, from distributing or dispensing a controlled substance without a valid prescription. 21 U.S.C. § 829(a) and (b).

13. Under the CSA and its implementing regulations, all prescriptions for controlled substances shall:

   a. be dated as of, and signed on, the day when issued;

   b. bear the full name and address of the patient;

   c. bear the drug name, strength, dosage form, quantity prescribed and directions for use; and,

   d. bear the name, address and registration number of the practitioner. 21 C.F.R. § 1306.05.

14. To ensure Schedule II controlled substances are only prescribed by licensed practitioners for legitimate medical purposes, the CSA requires that the prescription be in writing except that a practitioner may give an oral prescription in an emergency situation. 21 U.S.C. § 829(a).

**COMPLAINT - 4**

15. Under the CSA, no prescription for a Schedule II controlled substance may be refilled. 21 U.S.C. § 829(a). A new prescription is required.

16. For Schedule II controlled substances, the dispensing pharmacy must have an original written prescription signed by the practitioner or, in an emergency situation, an oral prescription from the practitioner prior to dispensing the drug. 21 C.F.R. § 1306.11(a) and (d). For purposes of hospice patients, a valid prescription that is transmitted via facsimile to the pharmacy serves as the original written prescription. 21 C.F.R. § 1306.11(g).

17. In an emergency situation, a pharmacist may dispense a controlled substance listed in Schedule II upon receiving an oral authorization of a prescribing practitioner, provided that:

   a. The oral prescription must be from the prescribing individual practitioner;

   b. The quantity prescribed and dispensed is limited to the amount adequate to treat the patient during only the emergency period;

   c. The pharmacist shall immediately reduce the prescription to a writing that meets the requirements of 21 C.F.R. § 1306.05, except for the signature of the prescribing individual practitioner; and

   d. The pharmacy must receive a written prescription from the prescribing individual practitioner within seven (7) days of the oral prescription. 21 C.F.R. 1306.11(d).

18. An emergency situation means those situations in which the practitioner determines:

   a. That immediate administration of the controlled substance is necessary for proper treatment of the intended ultimate user;

**COMPLAINT - 5**

  b. That no appropriate alternative treatment is available, including administration of a drug which is not a controlled substance under Schedule II of the Act; and

  c. That it is not reasonably possible for the prescribing practitioner to provide a written prescription to be presented to the person dispensing the substance, prior to the dispensing.

21 C.F.R. § 290.10.

19. If a pharmacy or pharmacist dispenses a controlled substance without a valid prescription, it is liable for a civil penalty of up to $25,000 for each violation. 21 U.S.C. §§ 842(a)(1) and 842(c)(1)(A).

20. Under the CSA, record-keeping is a critical aspect of the system of controls. Accordingly, every DEA registrant is required to maintain, on a current basis, a complete and accurate record of each controlled substance that it receives, sells, delivers, and of which it disposes. 21 U.S.C. § 827(a)(3). It is unlawful "to refuse or negligently fail to make, keep, or furnish any record, report, notification, declaration, or order form, invoice, or information required" by the CSA or regulation. 21 U.S.C. § 842(a)(5). Each violation of the CSA's record-keeping requirements can result in a civil penalty of up to $10,000. *See* 21 U.S.C. § 842(c)(1)(B).

## BACKGROUND

21. The DEA learned of potential violations of the CSA by Mountain Care from the Idaho Board of Pharmacy, including that Mountain Care: (1) dispensed controlled substances before receiving signed prescriptions; (2) accepted prescriptions without the required prescriber information or the correct prescriber listed; and (3) accepted prescriptions with missing information, such as the strength, form, and total quantity dispensed.

**COMPLAINT - 6**

22. On April 2, 2014, the DEA conducted an administrative inspection of Mountain Care. The DEA discovered that Mountain Care's records were disorganized, incomplete, and inaccurate. Mountain Care kept prescriptions and daily logs in boxes roughly organized by month, records were missing, and some records were not on site (a violation of federal law, in and of itself).

23. Given the state of Mountain Care's records, the DEA had to devote significant time and resources to sorting, scanning, and organizing Mountain Care's records before it could begin its review. Ultimately, the DEA reviewed four months of Mountain Care's records (*i.e.*, September 1, 2012 through December 31, 2012). Many of the prescriptions filled by Mountain Care during this period were for Schedule II drugs, such as oxycodone and morphine, which can cause significant harm if used improperly and have a high potential for abuse.

24. The DEA's inspection uncovered that Defendants routinely dispensed Schedule II drugs without a valid prescription. The DEA identified over 900 prescriptions filled by Mountain Care between September 1, 2012 and December 31, 2012—including prescriptions personally filled by Stong—that did not include information required by the CSA. Of the 1217 Schedule II prescriptions reviewed by the DEA, 964 were invalid.

25. The DEA also uncovered that on multiple occasions Defendants dispensed Schedule II drugs without any prescription at all and failed to obtain and maintain required records.

### FIRST CLAIM FOR RELIEF
### (Dispensing Controlled Substances Without a Valid Prescription)

26. The United States realleges and incorporates by reference each allegation in the preceding paragraphs as if fully set forth herein.

**COMPLAINT - 7**

27. On 778 occasions, Defendants violated the CSA by dispensing Schedule II controlled substances without a valid prescription containing all required elements in violation of 21 U.S.C. §§ 829(a) and 842(a)(1):

    a. 101 prescriptions are missing the patient's full address, in violation of 21 CFR § 1306.05(a);

    b. 25 prescriptions do not contain the practitioner's name, in violation of 21 CFR § 1306.05(a);

    c. 13 prescriptions do not state the practitioner's address, in violation of 21 CFR § 1306.05(a);

    d. 261 prescriptions do not have the practitioner's DEA Number, in violation of 21 CFR § 1306.05(a);

    e. 5 prescriptions are not signed by the practitioner, in violation of 21 CFR § 1306.05(a);

    f. 9 prescriptions list an incorrect practitioner DEA Number, in violation of 21 CFR § 1306.05(a);

    g. 336 prescriptions are written on pre-populated prescription forms created by Mountain Care, in violation of 21 CFR §§ 1306.04(a), 1306.05(a), 1306.05(f), and 1306.11(f); and

    h. 27 faxed prescriptions do not specify that the prescription is for a "hospice patient," in violation of 21 CFR § 1306.11(g).

28. While many of the above prescriptions were missing more than one required element, each prescription is included only once in the above totals.

29. Each of the above dispensations is a separate violation of 21 U.S.C. § 842(a)(1), and Defendants are subject to a civil penalty of up to $25,000 for each violation. 21 U.S.C. § 842(c)(1)(A).

**COMPLAINT - 8**

## SECOND CLAIM FOR RELIEF
### (Failing to Make and Keep Records)

30. The United States realleges and incorporates by reference each allegation in the preceding paragraphs as if fully set forth herein.

31. On 563 occasions, Defendants violated the CSA by failing to make, keep, or furnish required records in violation of 21 U.S.C. § 842(a)(5):

    a. 16 prescriptions were filled on an emergency basis after receiving an oral authorization from a practitioner, however, no written prescription was subsequently obtained by Mountain Care within the time period permitted, in violation of 21 CFR § 1306.11(d);

    b. 85 prescriptions are listed as having been filled on a daily log, however, no written prescription could be found in Mountain Care Pharmacy's records, in violation of 21 CFR §§ 1306.11(d), 1304.04(a), and 1304.21(a); and

    c. 462 prescriptions are recorded as partially filled, however, the prescriptions do not note that the patient was "terminally ill," in violation of 21 CFR § 1306.13(b).

32. Each of the above failures to make, keep, or furnish a required record is a separate violation of 21 U.S.C. § 842(a)(5), and Defendants are subject to a civil penalty of up to $10,000 for each violation. 21 U.S.C. § 842(c)(1)(B).

## THIRD CLAIM FOR RELIEF
### (Failing to Make and Keep Records at the Registered Location)

33. The United States realleges and incorporates by reference each allegation in the preceding paragraphs as if fully set forth herein.

34. Defendants failed to comply with the requirements of the CSA when they failed to maintain the records of each registered location at that location. 21 C.F.R. § 1304.04.

35. On at least one occasion, Mountain Care's records were not stored at the registration location in Idaho. Mountain Care's records were unlawfully stored in Utah.

**COMPLAINT - 9**

36. Defendants' failure to maintain records at the registered location violates 21 U.S.C. §§ 842(a)(5), 842(a)(10) and 21 C.F.R. § 1304.04, and subjects them to civil monetary penalty of not more than $10,000 for that violation.  21 U.S.C. § 842(c)(1)(B).

### FOURTH CLAIM FOR RELIEF
### (Failing to Make and Keep Accurate Records)

37. The United States realleges and incorporates by reference each allegation in the preceding paragraphs as if fully set forth herein.

38. On thirteen occasions, Defendants violated the CSA by recording incorrect DEA numbers in Mountain Care's dispensing log.  21 C.F.R. § 1304.21.

39. Defendants' failure to maintain accurate records violates 21 U.S.C. §§ 842(a)(5), and 21 C.F.R. § 1304.21, and subjects them to civil monetary penalty of not more than $10,000 for each violation.  21 U.S.C. § 842(c)(1)(B).

### PRAYER FOR RELIEF

The United States seeks entry of judgment for the United States on Claims One through Four, for civil monetary penalties for violations of the Controlled Substances Act, and for any other relief the Court deems just, including the United States' costs.

Respectfully submitted this 8th day of June 2017.

> RAFAEL M. GONZALEZ, JR.
> ACTING UNITED STATES ATTORNEY
> By:
>
> /s/ James P. Schaefer
> JAMES P. SCHAEFER
> Assistant United States Attorney